RAMSEY *et al.* v. PERSINGER *et al.*
(SCOTT *et al., Interveners*).

No. 6029. Opinion Filed May 5, 1914.

Rehearing Denied June 2, 1914.

(141 Pac. 13.)

1. **CONSTITUTIONAL LAW** — Amendment — Procedure — Statutes. The provisions of chapter 44, Sess. Laws 1907-08 (sections 3379, 3382-3384, Rev. Laws 1910), do not furnish a procedure to secure an expression of the voters on a constitutional amendment proposed by the Legislature as provided in section 1, art. 24, of the Constitution of Oklahoma.

2. **SAME**—Election—Ballots. Ballot title examined, and held sufficient.

3. **STATUTES**—Title—Joint Resolution. A title stating the object of a joint resolution proposing an amendment to the Constitution, is not necessary; the same not being ordinary legislation.

4. **STATUTES**—Time of Taking Effect—Submission of Constitutional Amendment. Where the Legislature, by a two-thirds vote of each house, by resolution, orders a proposed amendment to the Constitution submitted at a special election to be held at a time named therein, section 58, art. 6, of the Constitution does not apply.

5. **CONSTITUTIONAL LAW**—Amendment—Agreement of Legislature. Where the Legislature, by two-thirds vote, adopts a joint resolution directing the Secretary of State to submit a constitutional amendment to the people under section 1, art. 24, of the Constitution, held, that the Legislature thereby agrees to such proposed amendment.

6. **SAME**—Adoption—Validity. Where substantially every constitutional and statutory requirement is met, no fraud or deceit being charged, a large majority of those voting at the special election August 5, 1913, voting in favor of the adoption of amendment to section 31, art. 6, of the Constitution, as proposed by the Legislature, held, said amendment was legally adopted.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

*Quo warranto* by J. H. Persinger, Roscoe Thomas, J. C. Elliott, I. G. Griffin, Robert Scivally, T. N. Roach, George W. Vincent, George H. Hinds, John B. Favor, and W. T. Leahy

against G. A. Ramsey, J. F. Darby, I. C. Renfrow, Frank M. Gault, and G. T. Bryan, and Charles E. Scott, J. W. Hubbard, J. W. Allison, J. B. Swartz, Ewers White, G. M. Snider, J. B. Tosh, and J. G. Willis intervene. Judgment for plaintiffs, and defendants bring error. Reversed and remanded, with directions.

*Chas. West,* Atty. Gen., and *S. E. McElhoes,* Asst. Atty. Gen., for plaintiffs in error.

*Ledbetter, Stuart & Bell* and *Giddings & Giddings,* for defendants in error.

*Freeman E. Miller,* for interveners.

LOOFBOURROW, J. The *de facto* members of the Board of Agriculture of the state of Oklahoma, under section 31, art. 6, of the Constitution of Oklahoma, as amended at the general state election November 5, 1912, consisted of the above-named defendants in error and G. T. Bryan, president of said board, one of the plaintiffs in error, who was made defendant on the trial of this cause for the reason that he affiliated with plaintiffs in error and recognized them as the official Board of Agriculture.

On May 7, 1913, the House of Representatives, as shown by their Journal, p. 767, passed a resolution providing for the submission of the proposed amendment to the Constitution, amending section 31, art. 6, relating to the Board of Agriculture, same being House Joint Resolution No. 4.

On June 30, 1913, the following action was had by the Senate, as appears at page 1700 of the Senate Journal:

"On motion of Senator Barrett, House Joint Resolution No. 4 was advanced to engrossment and third reading. House Joint Resolution was read the third time. Senator Barrett offered the following amendment:

" 'Oklahoma City, Okla., June 30, 1913.

" 'Mr. President: I move to amend House Joint Resolution No. 4 to read as follows: Be it resolved by the House of Representatives and Senate of the Fourth Legislature, that the Secretary of State is hereby instructed to prepare and submit to the people of Oklahoma for approval or rejection at the special election to be held August 5, 1913, the following proposed section to the Constitution. The section to be submit-

ted shall be numbered section 31, art. 6, and if adopted shall be in lieu of section 31, art. 6, of the present Constitution, and shall read as follows: Section 31. A Board of Agriculture is hereby created to be composed of five members all of whom shall be farmers and shall be selected in manner prescribed by law. Said board shall be maintained as a part of the state government, and shall have jurisdiction over all matters affecting animal industry and animal quarantine regulation, and shall be the Board of Regents of all State Agricultural and Mechanical Colleges, and shall discharge such other duties and receive such compensation as now is, or may hereafter be, provided by law. Barrett.'

"Senator Barrett moved the adoption of the amendment. Vote was taken, and the motion carried.

"The question being, 'Shall the resolution pass as amended?' the roll was called with the following result:

"Yeas:  *  *  *  Total, 28.

"Nays:  *  *  *  Total, 2.

"Excused:  *  *  *  Total, 5.

"Absent:  *  *  *  Total, 5.

"The Chair declared the resolution, having received a constitutional majority, had carried.

"The question being, 'Shall the special election be ordered held on Tuesday, August 5, 1913, for the purpose of submitting said proposed amendment to the people for their approval or rejection?' the roll was called; the vote resulting as follows:

"Yeas:  *  *  *  Total, 30.

"Nays:  *  *  *  Total, 0.

"Excused:  *  *  *  Total, 5.

"Absent:  *  *  *  Total, 5.

"The Chair declared the special election ordered.

"House Joint Resolution No. 4 as amended was signed by the President *pro tempore* in open session and ordered transmitted to the House."

On page 1389 of the House Journal appears the following:

" 'Mr. Speaker of the House of Representatives: I am directed by the honorable Senate to transmit herewith House Joint Resolution No. 4 as amended by the Senate and to inform you that said resolution has passed the Senate as amended and signed by the *President pro tempore* in open session. Most respectfully, Ned McDaniels, Secretary of the Senate.'

"On motion of Mr. Pruett, the House concurred in the Senate amendments to House Joint Resolution No. 4.

"The question being, 'Shall House Joint Resolution No. 4 as amended by the Senate pass?' the following roll call resulted:
"Ayes:   *   *   *   Total, 66.
"Nays:   *   *   *   Total, none.
"Absent:   *   *   *   Total, 31.

"The Speaker declared the resolution as amended, having received a majority of the votes of all the members elected to and constituting the House of Representatives, passed.

"The Speaker stated the question, 'Shall constitutional amendment provided for in House Joint Resolution No. 4 be submitted at the special election to be held throughout the state on August 5, 1914?' and the roll being had thereon resulted as follows:
"Ayes:   *   *   *   Total, 66.
"Nays:   *   *   *   None.
"Absent:   *   *   *   Total, 31.

"The Speaker declared the question to submit the constitutional amendment provided for in House Joint Resolution No. 4, at the special election to be held throughout the state on August 5, 1913, passed."

On page 1392 of the House Journal appears the following:

"The following committee report was read:

" 'Mr. Speaker:  We, your committee on enrollment, report   *   *   *   House Joint Resolution No. 4   *   *   *   correctly enrolled.  Cordell, Chairman.'

"The Speaker signed the enrolled copy of   *   *   *   House Joint Resolution No. 4   *   *   *   in open session after reading at length."

On page 1399 of the House Journal appears the following:

"The following message was received from the Governor:

" 'July 5, 1913.

" 'To the House of Representatives of the Fourth Legislative Assembly in Extraordinary Session Assembled:  This is to advise you that I have signed and approved bills as follows:   *   *   *   July 1, 1913.   *   *   *   Committee substitute for House Joint Resolution No. 4, by Lenox *et al.*   *   *   *   Sincerely yours, Lee Cruce, Governor of the State of Oklahoma.' "

Thereafter the following ballot title was prepared and placed upon ballots voted at the special election held throughout the state on August 5, 1913, viz.:

"Ballot Title.

"State Question No. 60. Issued by Order of the Legislature.

"The gist of the proposition is to create a new Board of Agriculture of five instead of eleven members and repeal all that portion of section thirty-one of article six of the Constitution except the first subdivision thereof, that is, to repeal all that portion dealing with any matter except the number and qualification as members of the Board of Agriculture and prescribing their jurisdiction and duties.

Yes ☐

"Shall it be adopted

No ☐

Said election was held, the returns canvassed, and the said constitutional amendment was declared adopted. The Governor appointed plaintiffs in error members of said board. Thereafter the defendants in error commenced a *quo warranto* proceeding against the plaintiffs in error, and the interveners intervened, claiming to be the *de jure* members of said board; the petition of interveners was dismissed, without prejudice, by the trial court, and the demurrer of plaintiffs in error to the petition of defendants in error was overruled. The plaintiffs in error electing to stand upon said demurrer, judgment was rendered against them, ousting Darby, Gault, Renfrow, and Ramsey, and finding and decreeing defendants in error to be the *de jure* Board of Agriculture; from which judgment plaintiffs in error appeal, and the same is now before us for review, the paramount question being the validity of the said constitutional amendment.

The Constitution of this state may be amended, first, under article 5, sec. 2, of the Constitution, by initiative petition, signed by fifteen per cent. of the legal voters of the state, etc., said

petition originating at the suggestion or initiative of the petitioners; second, under the provisions of section 3395, Rev. Laws 1910, the Legislature may pass a concurrent resolution suggesting proposed amendments to the Constitution, to ascertain the sentiment of the people thereon, and any time within one year thereafter the citizens of the state may carry out the suggestion by filing initiative petitions as under the first method above indicated. A third method is provided by article 24, sec. 2, of the Constitution, which provides for a convention to revise the Constitution, a referendum every twenty years. The fourth method is found in article 24, sec. 1, of the Constitution, as follows:

"Any amendment or amendments to this Constitution may be proposed in either branch of the Legislature, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered in their journals and referred by the Secretary of State to the people for their approval or rejection, at the next regular general election, except when the Legislature, by two-thirds vote of each house, shall order a special election for that purpose. If a majority of all the electors voting at such election shall vote in favor of any amendments thereto, it shall thereby become a part of this Constitution.

"If two or more amendments are proposed they shall be submitted in such manner that electors may vote for or against them separately."

The latter method of amending the Constitution was followed in the case at bar.

It is admitted that no arguments were prepared or distributed among the voters, and it is apparent that less than 40 days intervened between the passage of the resolution and the holding of the election at which such measure was declared to have been adopted; and for those reasons it is contended that the amendment was not legally adopted.

The statute requiring arguments, etc., is found in article 1, c. 44, Sess. Laws 1907-08, and chapter 37, Rev. Laws 1910; the title of said bill being as follows:

"An act to provide for carrying into effect the initiative and referendum powers reserved by the people in articles five and eighteen of the Constitution of the state of Oklahoma, to regulate elections thereunder, and to punish violations of this act."

Section 3382, c. 37, Rev. Laws 1910, provides:

"Arguments shall be prepared for and against each measure to be submitted to a direct vote of the people of the state, the length of the arguments not to exceed two thousand words for each side, of which one-fourth may be in answer to opponents' arguments. For one side the arguments shall be prepared by a joint committee of the House and the Senate, and for the other by a committee representing the petitioners. Where the Legislature submits a competing bill, the argument against it shall be prepared by the committee that prepared the affirmative of the opposing bill. Where the Legislature submits any other question, the argument for the negative shall be prepared by a committee representing the members of the Legislature who voted against the substance of the measure."

And section 3383, *Id.*, provides:

"The first part of each argument shall be completed not later than two weeks after the Governor's announcement of the submission of the measure. Twenty-five copies shall be filed with the Secretary of State, who shall at once deliver twenty-three copies to the chairman of the opposing committee. Each committee shall file its answer within two weeks: Provided, however, that in no case shall the time be so great as to bring the completion of the arguments nearer than one hundred days before any regular election nor later than forty days before any special election at which the measure is to be voted upon. Where the time for preparing the arguments is less than four weeks the time shall be divided equally between the two parts."

Section 3384, *Id.*, provides:

"Before the mandatory primary election held prior to each general election held throughout the state, at which any proposed law, part of an act, or amendment to the Constitution is to be submitted to the people, the Secretary of State shall forward or cause to be forwarded to the county clerk of each county in this state a sufficient number of the pamphlets hereinafter described to supply each voter of his county, and an additional number equal to ten per cent. of such number of votes:   *   *   *   Provided, however, that when the Legisla-

ture or the Governor shall order a special election for the express purpose of making such reference, the Secretary of. State shall, not later than forty days. before' any such special election, forward such pamphlets to the county clerk of each county, who shall in like manner immediately distribute them to the election inspectors for the election precincts of his county, and each of said inspectors shall, within five days, convoke, hold, or cause to be held, a public meeting of the electors of his district and distribute or cause to be distributed such pamphlets to the assembled voters, and use all other diligent means of distributing them to all the voters of such election precinct."

How can section 3382, *supra,* apply? There are no *petitioners;* there are no *competing measures* or *opposing bills;* nor does "the Legislature submit any *other question."* That clause, in connection with the other language of the act, clearly contemplates competing measures, a negative and affirmative argument; while the matter submitted is simply a single proposed amendment to the Constitution.

Passing to section 3383, *supra* :

"The first part of each argument shall be completed not later than two weeks after the Governor's announcement of the submission of the measure."

That clause evidently refers to section 3379, Rev. Laws 1910, a part of the 1907-08 act, which provides:

"Whenever a petition is accepted and its title has been decided upon, the Secretary of State, shall, in writing, notify the Governor," etc.

That cannot apply to the case at bar, for there is no petition, and under article 24, sec. 1, of the. Constitution, *supra,* the proposed amendment is referred to the people by the Secretary of State, and not by the proclamation of the Governor.

As to section 3384, the proviso standing alone could be applicable; but the two preceding sections and the entire act are so ambiguous, when it is. sought to apply the same to an amendment to the Constitution proposed by the Legislature, as to invoke the rule that calls for an examination of the title of the act to ascertain the intent of the Legislature (see 36 Cyc. 1133) ; and we find the title of the act of 1907-08, *supra,*

specifically states the purpose of the act to be "in aid of initiative and referendum powers reserved to the people under articles five and eighteen of the Constitution."

It should be noted that section 21, Act 1907-08 (section 3393, Rev. Laws 1910), provides that said procedure is not mandatory.

As a further evidence of the independence of each method of amending the Constitution, section 3 of article 24 of the Constitution provides, "This article shall not impair the right of the people to amend this Constitution by a vote upon an initiative petition therefor," clearly showing that the act of 1907-08, *supra,* was not intended to constitute the procedure for amending the Constitution under article 24, sec. 1, *supra.* The only statutes that refer to amendments proposed by the Legislature are found in Sess. Laws of 1910, p. 122; the title of the act being:

"An act carrying into effect provisions relating to the initiative and referendum; prescribing the method of procedure for submitting and voting for proposed amendments to the Constitution and other propositions, and prescribing the method of appeal from petitions filed or from the ballot title; repealing sections 6, 7, and 16 of article one, chapter forty-four of the Session Laws of Oklahoma, 1907-08."

This act, with minor changes in some of the language, is found at sections 3376-3378, Rev. Laws 1910. Section 3376 reads as follows:

"Ballot Title—Printing of Ballots. When a measure is proposed as a constitutional amendment by the Legislature, * * * it shall be the duty of the parties submitting such proposition to prepare and file one copy of same with the Secretary of State and one copy with the Attorney General, such copies to contain a ballot title of not exceeding one hundred words, which shall contain the gist of the proposition without any argument or statement either for or against such measure. * * * If the measure is such as to require its being printed upon the ballots of a district or of the entire state, the State Election Board shall have supervision of such printing. * * *"

Section 3377, *supra,* provides that any person who is dissatisfied with the wording of the ballot title may appeal to the Supreme Court, etc.   Section 3378, *supra,* outlines the procedure upon appeal.   And the terms are broad enough and were no doubt intended to include amendments to the Constitution proposed by the Legislature, as provided by article 24, sec. 1, of the Constitution.

It is contended that the members of each house did not agree to the proposed amendment.   The statement of this case shows the vote in each house for and against the proposed amendment.   Those voting for it agreed to it beyond question; the Secretary of State is not authorized to submit it, nor is the Legislature empowered to direct the Secretary of State to submit it, unless the required number of the members of each house agree thereto.   An unconditional offer is an agreement to the thing offered by the party making the proposal.   The law, as a condition precedent to the right of the Legislature to submit a proposed amendment to the Constitution to the people for their approval or rejection, requires the Legislature to agree thereto, and the fact that they submit the amendment and order the Secretary of State to refer it is conclusive on that question.   To hold otherwise would be to begin with the presumption that the members of the Legislature were purposely acting in bad faith with the people, and, if we indulge in presumptions, we must presume in favor of the honesty and good faith of the Legislature in the exercise of its functions and the legality of the thing done.   The Constitution does not require that the legislative journals in this matter recite that "we hereby agree to the amendment"; it contemplates that a common sense, ordinary, and usual construction be placed upon its words, phrases, and requirements.

In *Lovett v. Ferguson,* 10 S. D. 44, 71 N. W. 765, the Legislature proceeded under section 1 of article 23, of the South Dakota Constitution, which reads as follows:

"Any amendment or amendments to this Constitution may be proposed in either house of the Legislature, and, if the same shall be agreed to by a majority of the members elected to each

of the two houses, such proposed amendment or amendments shall be entered on their journals, with the yeas and nays, taken thereon, and it shall be the duty of the Legislature to submit such proposed amendment or amendments to the vote of the people at the next general election. And if the people shall approve and ratify such amendment or amendments by a majority of the electors voting thereon, such amendment or amendments shall become a part of this Constitution: Provided, that the amendment or amendments so proposed shall be published for a period of twelve weeks previous to the date of said election, in such manner as the Legislature may provide; and provided, further, that if more than one amendment be submitted they shall be submitted in such manner that the people may vote for or against such amendments separately."

There, as here, the Legislature passed a joint resolution, as follows:

"House Joint Resolution proposing amendment to the Constitution—A joint resolution to amend the Constitution of the state of South Dakota by repealing article 24 thereof, relating to prohibition, and submitting the same to a vote of the people.

"Be it resolved by the House of Representatives of the state of South Dakota, the Senate concurring:

"Section 1. (Question submitted.) That at the general election to be held in the state of South Dakota on the first Tuesday after the first Monday in November, 1896, there shall be submitted to a vote of the qualified electors of the state of South Dakota the following question: 'Shall article twenty-four of the Constitution be repealed?'"

It was contended that there was nothing in the proceedings to show that the proposed amendment was agreed to by the two houses; but the court, in passing upon that question, said:

"This court will not presume that the legislative department of the government would attempt to submit to the vote of the people a proposed amendment to the fundamental law which they themselves had not agreed to, or go through the idle ceremony of submitting an amendment to the people merely to obtain an expression of their views upon the question submitted. Such an assumption or presumption would be to interpret to the co-ordinate branch of the government gross ignorance or the deliberate intention of deceiving the people. The

two houses having treated the amendment as one proposed to the Constitution and submitted the same to a vote of the people, they must be conclusively presumed to have agreed to it, as the same could only have been legally submitted after being agreed to."

The question is not raised in either the Nebraska or Kansas case, cited *infra*, although the record discloses no affirmative recital that the two houses agreed to the proposed amendment in either case.

Under section 3376, *supra*, the ballot title was prepared by the Attorney General. It is contended that the ballot title is defective, and that it does not propose in its terms to submit a constitutional amendment. While the word "amendment" does not appear in the ballot title, still the proposition is, first, to create a new Board of Agriculture; second, to have five instead of eleven members; third, to repeal all of section 31 of article 6 of the Constitution except the first subdivision, as changed by the proposition. While the ballot title could have been more explicit, it does show that an amendment to the Constitution is proposed, and indicates the manner in which it is to be amended. If any person was dissatisfied with the wording of the ballot title, they had a right to appeal, as provided in section 3377, *supra;* but in this case there was no appeal.

It is contended that the ordering of a special election is a matter of legislation, and in order for a bill or act directing the holding of a special election to be valid, the provisions of section 57 of article 5 of the Constitution, requiring a title, and section 58 of article 5 of the Constitution, which provides that no act shall take effect until 90 days after the adjournment of the Legislature, etc., must be complied with. *In Re Senate File 31,* 25 Neb. 865, 41 N. W. 981, under a similar constitutional provision, involving the validity of an amendment to the Constitution, that court held:

"A title stating the object of a bill or provision to amend the Constitution is unnecessary, and if added may be disregarded; such title being necessary only in cases of ordinary legislation."

At 15 Cyc. 341 · is this proposition:

"In order to make a popular election valid, there must be a time fixed in advance for holding it, either by law or by the officer or officers empowered by law to appoint the time."

In this case two-thirds of the members of each house were the officers empowered by law to appoint the time, and to order the special election.

*Hatch v. Stonemen,* 66 Cal. 632, 6 Pac. 734, is cited by counsel. That case was an application for writ of mandamus to compel the Governor of California to sign and approve a certain measure adopted by the Legislature of that state, providing for the submission to the people of certain amendments to the Constitution, and also to issue a proclamation calling a special election for that purpose. The clause of the Constitution involved is as follows: ·

"And it shall be the duty of the Legislature to submit such proposed amendment or amendments to the people in such manner and at such times and after such publication as may be deemed expedient."

The court said:

"It will be remarked that the power to propose an amendment to the Constitution is vested in the two houses—Senate and Assembly—and, if two-thirds of all the members elected to each of the two houses vote in favor thereof, it shall be the duty of the Legislature to submit such proposed amendment or amendments to the people to be voted thereon. The proposal of the amendment or amendments is not by the Legislature, as such, in the ordinary enactment of the law, and with the proposal the Governor has nothing to do. The act is that of two-thirds of each branch of the Legislature. But the matter of submitting the proposed amendment or amendments to the vote of the people is quite different; that is to be done by the Legislature, by a law to that effect, and in the enactment of a law the Governor is a part of the lawmaking power."

The court holding that the calling of a special election for the purpose of submitting the amendment had to be done by the enactment of a law, and the same procedure followed as in the enactment of any other law. But in the case at bar, section 1, art. 24, of the Constitution, *supra,* specifically pro-

vides that the proposed amendment shall be submitted "at the next regular general election, *except when the Legislature, by two-thirds vote of each house, shall order a special election for that purpose."* (Italics ours.)

The record shows that the Governor approved the entire proceeding. The California case supports the theory that the proposal of the amendment and the ordering of the special election were neither matters of ordinary legislation. Each act is that of two-thirds of each branch of the Legislature; therefore neither section 57 nor 58 of article 5, *supra,* apply.

In *Kansas Prohibitory Amendment Cases,* 24 Kan. 700, the question was the validity of the prohibitory amendment submitted at the November election, 1880. Mr. Justice Brewer, in the opinion, said in part:

"Questions of policy are not questions for the courts. * * * Here the single question is one of power. * * * When a constitutional amendment has been submitted, the single inquiry for us is whether it has received the sanction of popular approval in the manner prescribed by the fundamental law."

The provisions of section 1, art. 14, of the Kansas Constitution being:

"Propositions for the amendment of this Constitution may be made by either branch of the Legislature; and if two-thirds of all the members elected to each house shall concur therein, such proposed amendments, together with the yeas and nays, shall be entered on the journal; and the Secretary of State shall cause the same to be published in at least one newspaper in each county of the state * * * for three months preceding * * * the election."

It was contended:

"First, that the proposed amendment was never legally submitted to the people, inasmuch as it does not appear in full upon the journal; second, that no provision was made for receiving, counting, or canvassing votes, that therefore the action of the election boards, county commissioners, and state canvassers was without warrant of law, and void, and that this court has and can have no legal evidence that a majority of the votes cast upon this amendment was in favor of it."

The proposed amendment was not entered at length on the journals. No procedure or election machinery had been adopted for the special purpose of submitting the constitutional amendment; no officers appointed; the act cast no duty upon the general election officers, and did not in terms refer to the general election law of Kansas; but the general election law, officials, and machinery were appropriated and used, and the court held that the amendment was legally adopted and valid. Justice Brewer, in the opinion, said:

"The two important, vital elements in any constitutional amendment are the assent of two-thirds of the Legislature, and a majority of the popular vote. Beyond these, other provisions are mere machinery and forms. They may not be disregarded, because, by them, certainty as to the essentials is secured. But they are not themselves the essentials."

The learned Justice then illustrates the proposition by supposing that the Secretary of State had omitted to publish the proposed amendment in some one of the several counties of the state, as required by the Constitution, and then says:

"Would it not be simply an insult to common sense to hold that thereby the will of the Legislature and the will of the people had been defeated?"

Another reason assigned why this election should be held to be void and the proposed constitutional amendment invalid is that the petition alleges:

"That no notice of the contents of the resolution attempting to submit said so-called amendment was ever given to the people and voters of Oklahoma in any county thereof, in any manner provided by law, and less than 40 per cent. of the voters participated in the election."

Neither the Constitution nor any statute applicable to the procedure for the Legislature submitting a constitutional amendment that pretends to fix the character or length of notice has been called to our attention, for the very good reason that none exists; that matter was left to the sound discretion of the Legislature. At the time the resolution was passed, it was a

matter of common knowledge that a special election would be held on August 5, 1913, at which election the following questions would be and were submitted:

State question No. 46: "Shall section 9, article 9, of the state Constitution be amended?"

This question had previously been before the people of this state, and it was discussed pro and con throughout the entire state, and practically every newspaper in the state carried matter for or against the amendment. State Question No. 57, proposing an amendment whereby the taxes levied for the maintenance of the common schools upon the property of any public service corporation operating in more than one county in the state should be paid into the common school fund. Also State Question No. 58, proposing to amend the Constitution by adopting an additional section providing for calling elections in any county upon petition of sixteen per cent. of the total voters, etc., whereby such county could abolish or establish township government. Also State Question No. 47, proposed by Referendum Petition No. 19, to veto a certain section of the mining law passed by the Oklahoma Legislature at its Fourth regular session; and on the latter question arguments were prepared and circulated for and against the proposition as contemplated by Sess. Laws of 1907-08, *supra*. And on the same ballot was the proposed amendment involved in the case at bar; 92,000 out of 95,000 votes cast voting thereon. Each of these questions was submitted at said election held in each and every county in the state, and we are unable to see, in the face of these facts, how it is possible to arrive at the conclusion that the people in this state had no notice of the election held on August 5, 1913. And the Legislature, in its discretion, no doubt concluded that under the circumstances the passage of the resolution submitting the proposed amendment and ordering the election was sufficient notice. The citizens of the state are charged with knowledge and notice of the official acts of its Legislature. The fact that less than 40 per cent. of the voters

participated in the election is no reason why the amendment should not stand. Section 3 of article 5 of the Constitution provides:

"Any measure referred to the people by the initiative shall take effect and be in force when it shall have been approved by a majority of the votes cast in such election. Any measure referred to the people by the referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon, and not otherwise."

And under section 1 of article 24:

"If a majority of all the electors voting at such election * * * vote in favor of an amendment, it shall thereby become a part of this Constitution."

And when the Constitution is revised as provided in section 2 of article 24, *supra*, only a majority of the electors voting thereon is necessary to cause the same to become effective.

It is a matter of history and common knowledge in this state that, at the time the Constitution was adopted, these provisions were placed therein purposely, and one of the arguments urged in favor of their adoption was the fact that it thereby became possible for a majority of those voting at an election for that purpose to amend the Constitution, and thereby deprive the stay-at-home and disinterested voter from defeating any changes sought to be made in the fundamental law of this state by those who were sufficiently interested in government to attend the election.

Summarizing, the following constitutional requirements were met in the adoption of this amendment:

First. The amendment was proposed in one branch of the Legislature by resolution.

Second. It was agreed to by a majority of the members elected to each of the two houses.

Third. The proposed amendment, with the yeas and nays thereon, was entered upon the journals of each house.

Fourth. The resolution received the approval of the Governor, though we do not pass upon the necessity of such approval.

Fifth. It was referred by the Secretary of State to the people for their approval.

Sixth. It was submitted to a vote of the people at a special election which was ordered by a two-thirds, vote of each house.

Seventh. A large majority of the electors voting at such election voted in favor of the amendment.

Eighth. More than one constitutional amendment was proposed at that election, and they were so submitted that the electors could vote upon each separately.

Every statutory requirement was met. One copy of the amendment was filed with the Secretary of State, and one with the Attorney General. Thereafter the Attorney General submitted the ballot title as shown *supra.* All persons interested must have been satisfied with the wording of the ballot title as prepared, for no appeal was presented to the Supreme Court offering a substitute title for the one prepared by the Attorney General. The ballots were distributed, and the election held; about 95,000 votes were cast at said election, more than 92,000 voting on the proposed amendment, and more than 67,000 voting for its adoption.

It is neither charged nor contended that there was any fraud practiced in this election, nor that any voters were deprived of the privilege of voting, nor that a different result would have obtained had some other method of giving notice been followed.

Every constitutional and statutory requirement applicable was substantially complied with, and, if there were any irregularities or informalities, then there is no better recognized doctrine in popular government than that in elections the will of the majority controls, and that mere irregularities and informalities in the conduct of an election will not render the same invalid. See *Ardmore v. State,* 24 Okla. 862, 104 Pac. 913; *Stearns v. State,* 23 Okla. 462, 100 Pac. 909; *Haskell v. Reigel,* 26 Okla. 87, 108 Pac. 367, and cases therein cited; *Town of Grove v. Haskell,* 24 Okla. 707, 104 Pac. 56. This court, in the latter case, held:

"Elections are the ultimate expression of the sovereign will. When fairly expressed—that is, free from taint of fraud or

charge of improper conduct—it becomes the duty of courts to sustain them, where it can be done by a liberal construction of the laws relating thereto, rather than defeat them by requiring a rigid conformity to technical statutory directions, which do not affect the substantial rights of the electors. All reasonable presumptions as to their regularity will be indulged, and the penalty of disfranchisement will not be visited upon a qualified voter where he is not at fault, except in response to a plain mandatory requirement of the statute." (*Lovett v. Ferguson* [S. D.] *supra; In re File No. 31* [Neb.] *supra; Prohibitory Amendment Cases* [Kan.] *supra.*)

The proposed amendment was legally adopted, and is now a part of the Constitution of this state. Therefore the demurrer of the plaintiffs in error to the petition of defendants in error should have been sustained.

The judgment of the trial court is reversed, and the cause remanded, with directions to sustain the demurrer and dismiss the proceedings.

KANE, C. J., and TURNER, J., concur. RUSSELL, J., dissents.

RIDDLE, J. I concur in the general conclusion reached by a majority of the court, but am unable to concur in the reasoning advanced relating to the inapplicability of sections 3382, 3383, and 3384 of the Revised Laws of 1910, and section 1, art. 24, of the Constitution. In my judgment said sections, *supra,* apply with the same force to section 1, art. 24, of the Constitution that they do to articles 5 and 18. The main reason assigned by the court why said sections do not apply to section 1, art. 24, of the Constitution is that the title to said act is limited to articles 5 and 18, and makes no reference to article 24. Considering that article 24 deals with the amendments to the Constitution by initiation of propositions in the Legislature, it would appear that although the title to the act, by express terms, undertook to limit the act to article 5 of he Constitution, yet such title is broad enough to cover the body of the act, and in my opinion the context applies with equal force to article 24. It is a well-settled principle that the context of an act must govern, irrespective of the title, except where the Legislature wholly fails to com-

ply with constitutional provisions in not providing a title covering the subject-matter under consideration; but it must be admitted that the title to the act in question is sufficiently broad to meet the constitutional requirements in .this respect.· It is only when the meaning of the body of the act is doubtful that reference may be had to the title to remove the ambiguity, or to supply an omission. It is a well-settled principle of law that, if the body of the act is free from ambiguity, the meaning expressed must be given effect, without resort to the title. In 36 Cyc. p. 1134, the rule is laid down as follows:

"Ordinarily, where the body of a statute is free from ambiguity, the meaning expressed therein must be given effect, without resort to the title, and in no event should the language of the title be permitted to control expressions in the enacting clause in conflict therewith,"

—citing a long list of cases, among which are *Cornell v. Coyne,* 192 U. S. 418, 24 Sup. Ct. 383, 48 L. Ed. 504; *Patterson v. The Eudora,* 190 U. S. 169, 23 Sup. Ct. 821, 47 L. Ed. 1002; *Territory v. Hopkins,* 9 Okla. 133, 59 Pac. 976.

This court, in one or two cases, has held in effect that said act applies to article 24, as well as to the other articles referred to in the opinion of a majority of the court. In the case of *Trapp, Auditor, v. Wells Fargo Exp. Co.,* 22 Okla. 377, 97 Pac. 1003, Justice Williams, delivering the opinion of the court, said:

"It is evidently the duty of the Secretary of State to certify the title and text of each measure presented by initiative petition, referendum petition, *or by the Legislature, including constitutional amendments,* to the State Printer, which shall be printed upon the official ballots as contracted for by the State Printing Board. * * * All of this machinery belongs to the branch of the executive department of the state, and by section 1, art. 24, of the Constitution, *supra,* it is the duty of the Secretary of State to see to it that the State Printer and the State Election Board perform their duty with reference to the submission of measures by the initiative and referendum, and by the Legislature, including constitutional amendments, to the people for their approval or rejection." (Italics ours.)

Again, in the case of *Atwater v. Hassett et al.,* 27 Okla. 292, 111 Pac. 802, the court, speaking through Mr. Justice Williams, says:

"Section 10, art. 1, c. 44, Sess. Laws 1907-08, does not apply to said submission under the initiative and referendum."

Evidently he was speaking of the initiative and referendum as contained in articles 5 and 18 of the Constitution. If section 10 (Rev. Laws 1910, sec. 3381) of article 1 of the act of the Legislature of 1907-08 does not apply to the initiative and referendum, under articles 5 and 18 of the Constitution, and then if, as held by this court in the opinion by a majority of the court, said act does not apply to article 24 of the Constitution, I am at a loss to understand to what article or provision of the Constitution section 10 of the act does apply, as these three articles cover the subject-matter contained in said act of the Legislature. If the sections of the statute, *supra,* do not apply to and have no reference to article 24 of the Constitution by reason of the fact that its title limits said act to articles 5 and 18 of the Constitution, then it necessarily follows that no section or provision of said act would apply to article 24. It has in effect been held by this court in a number of cases that provisions of the Constitution similar to article 24 are not self-executing, and to hold that no part of the act of 1907-08 applies and that the act of 1910 referred to in the opinion of the court does not apply, then there is no law vitalizing article 24 of the Constitution. In other words, there is no authority whereby the Secretary of State or the Election Board could have placed before the voters the proposition involved herein. In my judgment the context of sections of 3382, 3383, and 3384 shows that they apply with the same force to article 24 of the Constitution that they do to articles 5 and 18. The latter part of section 3382 provides:

"Where the Legislature submits any other question, the argument for the negative shall be prepared by a committee representing the members in the Legislature who voted against the substance of the measure."

I think this clearly shows that, where any proposition is submitted by the Legislature, the minority members voting against the submission of said proposition should be represented by a committee in presenting the argument to the people against the adopting of such proposed amendment or matter submitted for their adoption or rejection. It is clear to my mind that this language has no reference to a petition initiated by the people, for in such case the Legislature has nothing to do with the submission to the people; but it has reference only to a proposition initiated by the Legislature and submitted to the people for their adoption or rejection. It is equally clear that section 3384 is broad enough to cover all propositions submitted to a vote of the people, whether initiated by the people or proposed by the Legislature. The language, in part, is:

"Before the mandatory primary election held prior to each general election held throughout the state, at which any *proposed law, part of an act, or amendment to the Constitution is to be submitted to the people,* the Secretary of State shall forward or cause to be forwarded to the county clerk of each county in this state a sufficient number of the pamphlets hereinafter described to supply each voter of his county, and an additional number equal to ten per cent. of such number of votes. * * *" (Italics ours.)

It certainly cannot be contended that this language is not broad enough to cover amendments initiated by the people, and which they cause to be submitted to themselves for adoption or rejection, together with all propositions submitted by the Legislature. I think the safe and sound rule is to hold that, notwithstanding sections 3382, 3383, and 3384, *supra,* apply to article 24 of the Constitution and the amendment here involved, yet said provisions of the law are merely directory, and a failure to comply with same should not have the effect to defeat the voice of the people after they have spoken, and especially in the absence of any allegation that any fraud was practiced, or any one was misled by a noncompliance with said law, or that the result of said election would have been different had said law been complied with. No doubt one purpose of the law as contained in sections 3382, 3383, and 3384

is that the people may be informed upon the question submitted to them for their consideration, yet it would also appear from the provisions referred to that another purpose, if not the primary purpose, was to give those who have charge of such matters, whether initiated by the people or proposed by the Legislature, and those who are opposing such proposition, an opportunity to set forth their view as to the merits and demerits of any proposed amendment. Entertaining this view, I see no reason why the parties interested could not waive such argument. Certainly if no arguments were prepared, the Secretary of State and the Election Board could not cause the same to be distributed to the voters. In the absence of argument, if a proposition is submitted fairly to the voters for their adoption or rejection, whether it originates with the people, or whether it is proposed and submitted by the Legislature, and if the people have had a fair opportunity to express their voice, and have in fact given their expression by their vote, and where there is no allegation of fraud or contention that any fraud was practiced or any undue advantage taken, or that the people were in any way misled by failure of those in charge to perform their duty in submitting arguments, and where it is not alleged that the result of said election would have been different had those in charge of said matter performed their duty and complied with the provisions of the law under consideration, their verdict expressed at the polls should not be set aside. *Town of Grove v. Haskell,* 24 Okla. 707, 104 Pac. 56; *McCarty v. Cain et al.,* 27 Okla. 82, 110 Pac. 653; *Martin v. McGarr,* 27 Okla. 653, 117 Pac. 323, 38 L. R. A. (N. S.) 1007.

"The courts have held that the voice of the people is not to be rejected for a defect or even a want of notice, if they have, in truth, been called upon and have spoken. In the present case, whether there were notices or not, there was an election, and the people of the county voted, and it is not alleged that any portion of them failed in knowledge of the pendency of the question, or to exercise their franchise." (McCrary on Elections, sec. 143.)

Quoting Cooley's Constitutional Limitations (7th Ed.) p. 929, discussing the subject of conduct of elections, he states:

"And it was said in the same case that any irregularity in conducting an election which does not deprive a legal elector of his vote, or admit a disqualified person to vote, or cast uncertainty on the result, and has not been occasioned by the agency of a party seeking to derive a benefit from it, should be overlooked in a proceeding to try the right to an office depending on such election."

In the case of *Town of Grove v. Haskell, Governor, et al.,* 24 Okla. 707, 104 Pac. 56, the court, through Justice Dunn, quoting from the Supreme Court of Kansas in the case of *Peabody v. Burch et al.,* 75 Kan. 543, 89 Pac. 1016, 12 Ann. Cas. 719, said:

"Although mandatory provisions of the statute are disobeyed in the preparation of the official ballot, the will of the voters expressed by means thereof cannot, on that account, be disregarded."

There the court also quotes from *Jones v. State ex rel. Wilson,* 153 Ind. 440, 55 N. E. 229, and *Russell v. McDowell,* 83 Cal. 70, 23 Pac. 183.

I think the rule as laid down above is peculiarly applicable to the case at bar, and should be adopted. I have given much thought and consideration to the matter under discussion, and I have had no little difficulty in reaching a conclusion which, in my judgment, is in harmony with law, reason, and justice. The court should not set aside the will of the people as expressed at the polls, unless it is clear that some fundamental and mandatory provision of the law or the Constitution has been disregarded. I am of the opinion that the provisions of the statute referred to herein are merely directory, and, inasmuch as there is no contention that there was any fraud practiced, or any one misled by failing to comply with the provisions of the statute, or that the result of said election would have been different had said provisions been strictly complied with, the adoption of the amendment under consideration by the people at the polls should not be disturbed or invalidated.