[Criminal No. 597.   Filed May 19, 1917.]

[165 Pac. 300.]

## J. J. ELLIOTT and O. B. HALL, Appellants, v. STATE, Respondent.

1. CRIMINAL LAW—RESTING ON STATE'S EVIDENCE—EFFECT.—Defendant cannot, by resting his case on the state's evidence in chief, limit the court's or jury's consideration thereto; but further evidence may be offered, and, if received, considered.

2. INTOXICATING LIQUORS—ILLEGAL SALE—JOINT SALE—EVIDENCE.— Evidence on prosecution for sale in violation of prohibition, *held* sufficient to connect a defendant with sale made by the other, as jointly conducting with him the business.

3. CRIMINAL LAW—EXPERT TESTIMONY—EVIDENCE OF ALCOHOL.—Testimony of experts as to amount of alcohol in liquor sold by defendants as shown by chemical tests, is admissible on prosecution for violation of prohibition.

4. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY BY REASON OF DEFENDANT'S EVIDENCE.—Defendant, prosecuted for violation of prohibition, showing that the beer sold by him was the same as that sold by another, samples of which were tested and found not to require an internal revenue license, the state may show samples of the beer of the other were tested by chemists and found intoxicating.

5. INTOXICATING LIQUORS—PROHIBITION—AMOUNT OF ALCOHOL.—Beer, though not containing sufficient alcohol to require an internal revenue license for its sale, may be intoxicating within the prohibition amendment.

6. INTOXICATING LIQUORS—VIOLATION OF PROHIBITION—GOOD FAITH.— It is no defense to sale in violation of prohibition that defendants relied on a guaranty of the brewers that the beer was nonintoxicating and investigation showing it did not contain enough alcohol to require an internal revenue license.

[As to what sales of intoxicating liquors are unlawful, see note in 12 Am. St. Rep. 353.]

APPEAL from a judgment of the Superior Court of the county of Maricopa.   R. C. Stanford, Judge.   Affirmed.

Mr. W. L. Barnum, for Appellants.

Mr. Wiley E. Jones, Attorney General, and Mr. R. Wm. Kramer and Mr. Geo. W. Harben, Assistant Attorneys General, for the State.

CUNNINGHAM, J.—The uncontroverted facts appearing in this record are that J. J. Elliott, one of these appellants, sold to William H. Woolf on September 24, 1915, two bottles filled with a liquor called "Frio beer," one of which bottles was filled by the manufacturer, and was the original package, and the other bottle filled from a keg or barrel through a faucet; that the place at which the sale was made was known as the Anheuser Bar in the city of Phoenix, Maricopa county, Arizona, and the stated purpose of the purchaser at the time he made the purchase was to analyze the liquid to determine its alcoholic contents and intoxicating qualities; that at the time of the said sale and for two or three days previous thereto, and for about the same length of time subsequent thereto, the business of selling this liquid was carried on at said bar. Appellant Elliott testified in answer to the question:

"Q. . . . What business was carried on there? A. We was selling this Frio; this stuff we got from the Copper City Brewing Company. Q. Who was selling it? . . . A. Why me and Mr. Hall. . . . Q. How long had you been engaged in selling Frio? A. From the 22d to the 25th."

The undisputed evidence is that during that period of time, and particularly on the 23d and 24th of September, the place was doing a rushing business selling "Frio." The information charged the appellants, Elliott and Hall, with the unlawful sale of intoxicating liquor. Therefore I find in the record, aside from the undisputed facts above referred to, the controverted fact of the intoxicating character of the liquor sold, and Hall's connection with the sale in question.

The appellant Hall rested his case at the time the state rested its case in chief. This defendant thereupon moved "that he be discharged for the reason that there is no evidence to connect him with this alleged offense." The motion was denied. Thereupon the defendant Hall moved the court to direct the jury to return a verdict of not guilty, and demurred "to the evidence for the reason that it is not sufficient to sustain the allegations in this case against the defendant O. B. Hall." The court denied this motion. The counsel for both defendants made the following announcement:

"By Mr. Barnum: The defense will proceed only as to the defendant Elliott."

At the close of the evidence in the case the motion to direct a verdict as to defendant Hall was renewed and denied. The motion was based upon the grounds that the evidence does not connect the defendant Hall with the sale, and shows that he was not present at the time of the sale; and upon the further grounds that a variance between the allegations of the information and the proof is shown in the particular that the information charges the defendants with having jointly made the sale, and the proof shows that defendant O. B. Hall was not present or took any part in the alleged sale; and for the further reason that there is no evidence showing that said O. B. Hall is interested in the sale of said liquor, nor that he participated therein.

The defendant Hall made an attempt to close the case against himself at the time the state rested. Such efforts as defendant Hall made at the close of the state's case in chief to shut out all further evidence against him by resting his defense on the state's evidence was ineffective for that purpose, and so recognized by said defendant when at the close of the evidence the defendant renewed his motion. Of course the trial court could not intelligently pass on the motion made at the close of all of the evidence, unless he considered all of the evidence produced on the trial bearing upon the matter of defendant Hall's connection with the alleged sale. In so considering the motion the duty of the court was plain to disregard the ruling on the motion as formally made, and give exact regard to all of the evidence bearing on the matter, whether the evidence was produced before or after the former ruling was made. A defendant cannot rest his case on the evidence produced by the prosecution in chief and limit the court's or jury's consideration to only such evidence as had been produced up to the time the defendant announced that his case is rested. Further evidence may be offered by the prosecution either in chief or as rebuttal, which materially affects the defendant who has rested his case. Such evidence may be offered, and when it is offered, if received by the trial court at any stage of the trial before the cause is submitted to the jury, such evidence is as important in the consideration by the court of a motion to direct a verdict or by the jury in arriving at a verdict as if it had been offered and received in the due order of the trial. Because evidence is received in the course of the trial out of its due, regular order

is no reason why the evidence should not be considered and given due force.

The evidence in the record which tends to connect the defendant Hall with the sale of the "Frio beer" is that at the time of Hall's arrest in the presence of Elliott both Hall and Elliott spoke about who were running the place.

"He said that they had a contract with the management of the concern that manufactured the goods. . . . Q. Did he [meaning Hall] say 'they' or 'we?' A. I took it he was speaking of the two. Q. Did he say 'they' or 'we?' A. 'We.' Q. Who was there when he was saying that? A. Mr. Elliott and Mr. Hall and myself [William H. Woolf]."

This is the state of the evidence connecting Hall with the transaction at the time he first moved for his discharge and for a directed verdict. The defendant Elliott testified as a witness in his own behalf, and admits that he sold Woolf "the stuff we was selling; Frio."

"Q. How long had you been selling this Frio beer? A. We sold it altogether about four days. Q. Where did you obtain this Frio? A. We got it from the Douglas Copper City Brewing Company."

On cross-examination this witness was asked:

"Q. . . . What business was carried on there? A. We was selling this Frio; this stuff we got from the Copper City Brewing Company. Q. Who was selling it? (Objected to. Objection overruled.) A. Why me and Mr. Hall. . . . Q. How long have you and Mr. Hall been engaged there in this selling of Frio? (Objected to, and objection sustained as to Mr. Hall.) . . . He may answer for himself, and not for Mr. Hall Q. How long had you been engaged in selling Frio? A. From the 22d to the 25th."

This evidence tends to prove the fact that O. B. Hall and J. J. Elliott jointly conducted the business carried on at the Anheuser Bar from September 22 to September 25, 1915, and that the nature of the business so carried on by said parties was that of selling Frio beer to all parties offering to purchase the said liquor. From such facts, if believed by the jury beyond a reasonable doubt, they were justified in drawing the inevitable inference that O. B. Hall, although not present, did advise and encourage every sale made, and impliedly gave his full consent to each sale made to each person who purchased the same during said period of time,

including the sale to William H. Woolf by J. J. Elliott. As a consequence, the defendant Hall is shown to be a principal in the commission of the offense charged. His connection with the commission of the offense is sustained by the evidence.

The appellants contend that error was committed in receiving evidence of expert chemists of the alcoholic contents of the liquor bought by witness William H. Woolf. The samples furnished the expert witness were tested for the presence of alcohol. They testified to the results obtained by them. Witness Woolf gave them the samples that they tested, and the samples were identified as the liquor bought by this witness at the sale in question. The liquor was shown by the test to contain alcohol in intoxicating quantities. The evidence was relevant to the issue and competent to establish such issue. No error was committed in admitting such evidence.

Objection was made, and the objection overruled, to witness Jim Murphy's testimony in chief. The admission of this testimony is assigned as error. This witness was introduced by the state in rebuttal to meet a situation injected into the case by the defendant Elliott's testimony. He had testified that a Mr. Parsons, a deputy internal revenue collector, came to the Anheuser Bar for samples of the Frio beer they were selling at that place. The purpose for which the samples were sought was to determine whether an internal revenue license was required for its sale. Elliott stated:

"Why he [meaning Parsons] came down and wanted to get some draft beer and some bottled beer, and I didn't have any draft beer at the time, and I takes him up to Thalheimer's and he gives him some of the same shipment that came from the same place; bought from the same people."

The state objected to this evidence, and moved to strike it out of the record. The objection was overruled. Thereupon the matter of the taking of the sample at Thalheimer's place, the testing of the sample so taken for alcohol, and the results of the test made were gone into by the defense. The witness Jim Murphy was placed on the stand in rebuttal, and testified that he as deputy sheriff arrested Thalheimer for selling intoxicating liquor, and that he searched under a warrant Thalheimer's place of business for intoxicating liquor, and took samples therefrom of Frio beer on draft. The samples

so taken were delivered to Dr. Watkins and Professor Jones, chemists, for testing. The bottles were marked. This is the substance of the evidence of this witness to which the appellants have objected and the admission of which is assigned as error.

A separate assignment of error complains of the admission in evidence of testimony of Claude Jones given in chief in said trial. W. W. Watkins' testimony is also assigned as error, and it is not plain from the assignments of error whether the appellants intend to attack the admissibility of the testimony given by these witnesses on their first introduction by the state, or their testimony given when called in rebuttal, but I think and will so treat the objections as if directed to their testimony given in rebuttal, as their testimony first given has already been decided to be relevant and competent.

The nature of the rebuttal testimony given by these expert witnesses had relation to the tests made by each of them of the samples of Frio beer taken from Thalheimer's place of business by J. T. Murphy, and the results of such tests. Such inquiry was made pertinent to the trial by the evidence given by Elliott with regard to having taken a sample of beer from the same place and from the same shipment from which Woolf bought. The sample which Elliott caused to be taken from Thalheimer's place was taken by Elliott for the internal revenue department's test for alcohol. The purpose in view for which such evidence was intended was clearly to show that Frio beer was not intoxicating. The fact that the United States laws do not impose a license tax for the privilege of selling liquors containing alcohol in quantities less than a specified percentage is absolutely no evidence that the sale of such liquors is not a violation of our prohibition amendment. The matter of privilege license is quite another thing from the matter of the offense of the sale of intoxicating liquors in violation of said amendment. Yet the defendant was permitted to go into that matter of requirement for United States privilege license to sell, and in all fairness the state should have been allowed to show that the very liquor which defendant had produced evidence tending to show required no revenue license was in fact an intoxicating liquor. The evidence was pertinent to the matter being inquired into, and the defendant brought about the situation making the evi-

dence admissible. No error was committed by admitting the evidence.

The defendant offered to prove by witness Elliott that the beverage alleged to have been sold by the defendants was sold to them by the Copper City Brewing Company under the guaranty that the same was a nonintoxicating liquor and that before receiving the same or disposing of any thereof the said defendants had taken the necessary precautions to ascertain the truthfulness of that statement, and from their investigation had learned that the same was not an intoxicant, that said investigation was made by the defendants in good faith by consulting the office of the internal revenue collector for the district of Arizona and New Mexico, and from said office the said defendants received information that the same was not an intoxicant, and that the defendants could rely upon the representations as made by the seller of said beverage. The state objected to the offer made, and the objection was sustained. The appellants assign this ruling as error.

The following additional offer of proof was made and rejected in part, to wit:

"And I will offer to prove further by this witness that he [defendant Elliott] believed all of said representations and relied upon the same, and had no knowledge that the beverage called 'Frio' was an intoxicant or contained any alcohol until after the same had been analyzed from samples furnished by him to the sheriff of Maricopa county, and when so informed he immediately desisted from the sale of the same and has sold none since."

The theory of the defense offered by the defendants seems to be in effect that they relied upon the written guaranty given by the manufacturer that the liquor was nonintoxicating, and that upon investigation by the government internal revenue collector's office it was found to contain insufficient alcohol to require a revenue tax or privilege sale license.

The brewer's guaranty was a civil contract between private parties, to which the public was not a party, and therefore was not bound by its terms and conditions. If the brewer guaranteed that the liquor sold to the appellants was nonintoxicating, while in fact it was intoxicating, the person who made the sale violated the law. If in fact the goods sold were not of the quality they were guaranteed to be—that is, the liquor sold under the guaranty was in fact intoxicating

liquor—then the purchaser had a cause of action against the seller for damages suffered for breach of warranty. The public had no such cause of action. The test of the intoxicating character of liquors which the prohibition amendment punishes for disposing of is not the contract by which the seller came into the possession of the liquor, nor the fact that no United States revenue license tax is levied against its sale, but the test is whether in fact the liquor sold was intoxicating liquor. One who sells liquors must know at his peril that the liquor sold is not in fact intoxicating in character. It is not enough to have an honest belief that the liquor is nonintoxicating. The act of selling joined with the intention to sell, and the fact existing that the thing sold is an intoxicating liquor completes the crime, whether the seller knew its intoxicating qualities or not, or whatever was his honest belief in respect to the intoxicating qualities of the liquor sold. The defendants' belief that the liquor sold was nonintoxicating is wholly immaterial and unimportant. The defendant's guilt is established when it is made to appear that the seller knowingly made the sale intending to sell the exact liquor which he transferred to the buyer, and that the liquor transferred was in fact intoxicating liquor. These facts shown, and the place of the sale within the jurisdiction of the court, are sufficient proof of the commission of the crime. The defendants controverted none of these facts. The defense offered to be shown is no defense whatever. It is in the nature of a civil defense of confession and avoidance, and not recognized in a criminal action.

Upon the whole case I am of the opinion that the defendants have been awarded a fair and impartial trial, and that substantial evidence sustains the judgment of conviction against both defendants. Therefore the judgment must be affirmed.

FRANKLIN, C. J., and ROSS, J., concur.