STATE ex rel. SPRINGER, County Atty., v. BLISS et al.

No. 32648.    May 20, 1947.

Rehearing Denied Sept. 30, 1947.

*185 P. 2d 220.*

J. M. Springer, County Atty., of Nowata, for plaintiff in error.

E. L. Mitchell, Harve L. Melton, and W. S. Speakman, for defendant in error Oklahoma Tax Commission.

Holliman & Brewer, of Bartlesville, and Miley, Hoffman, France & Johnson, and Charles E. France, all of Oklahoma City, for defendant in error Ethel Bliss.

WELCH, J.  This action was instituted by the county attorney of Nowata county for injunctive relief against the sale of beer and the issuance of licenses to sell beer.

The prime question presented is whether the injunction may be had without regard to whether the beer involved is intoxicating or even had any alcoholic content at all.  That is, there is neither contention nor allegation that the beer referred to is either capable of producing intoxication in fact or contains any alcohol at all.  The right is claimed to enjoin because of the name beer, whether it has any propensity to intoxicate the consumer, or has any alcoholic content.

On presentation to the trial court of these contentions and this question, the trial judge sustained a demurrer to plaintiff's petition, thus holding that the petition stated no cause of action and that the right to proceed as contended was without legal foundation. That holding of the trial court is presented here for review.

In 1933 the people of the state, upon referendum, adopted or approved an act referring to and defining "nonintoxicating beverages" as being beverages containing not more than 3.2% alcohol by weight.  In this action it is not clear what, if any, attack is sought to be made on that enactment.  The plaintiff's petition suggests in general terms that the act violates the Constitution.  But in

presentation of the matter by brief and oral argument it is pointed out that the enactment does not purport to authorize any beverage by name, and does not authorize the sale of beer by name and therefore it is expressly stated that the act itself is not unconstitutional when construed by its plain language. Thus it is made clear that petitioner only contends that act is unavailing or not effective, insofar as it might be relied upon as authority to sell beer as a beverage. This emphasizes the position of petitioner that it is the name only of the beverage or the beverage by name only which he seeks to reach by injunction and that there is no contention that the referendum act is unconstitutional on account of any claimed intoxicating quality in fact of the beverages authorized to be sold by the referendum act.

Thus we must proceed, as did the trial court, to determine the question whether the plaintiff's petition for injunction states a cause of action, or whether, as held by the trial court, the action undertaken is without legal foundation.

The petition alleges in material substance that Ethel Bliss unlawfully operates a place in the city of Nowata in that she sells a beverage commonly known and designated as beer; that the county judge issued to her a county license permitting the sale of beer and will issue such license to other persons; that the Oklahoma Tax Commission issued to her a license or permit to sell said beverage, and will issue such licenses to other persons; that such licenses were issued and are about to be issued under an act of the Legislature which act is void because in conflict with the prohibition ordinance of the Constitution.

The defendants demurred to the petition and, among other grounds, stated the petition does not state a cause of action.

The demurrers were sustained, and upon election by plaintiff to stand on the petition the cause was dismissed, and plaintiff appeals.

There is no allegation in the petition that the beer being sold was intoxicating nor any reference made to its alcoholic content.

In testing the sufficiency of the petition to charge violation of the Constitution the question is presented, Does the prohibition ordinance of the Constitution prohibit the sale of beer as such, or by name, and whether intoxicating or not?

The prohibition ordinance (page 115, O. S. 1941) begins:

"The manufacture, sale, barter, giving away, or otherwise furnishing, except as hereinafter provided, of intoxicating liquors within this State, or any part thereof, is prohibited for a period of twenty-one years from the date of the admission of this State into the Union, and thereafter until the people of the State shall otherwise provide by amendment of this Constitution and proper state legislation. . . ."

The phrase "intoxicating liquors" in this first sentence of the ordinance is not preceded or followed by any words of qualification or limitation. It is simply provided that intoxicating liquors are prohibited. The next sentence of the ordinance provides:

"Any person, individual or corporate, who shall manufacture, sell, barter, give away, or otherwise furnish any intoxicating liquor of any kind, including beer, ale, and wine, contrary to the provision of this section, or who shall, within this State, advertise for sale or solicit the purchase of any such liquors, or who shall ship or in any way convey such liquors from one place within this State to another place therein, except the conveyance of a lawful purchase as herein authorized, shall be punished, on conviction thereof, by fine not less than fifty dollars and by imprisonment not less than thirty days for each offense; Provided, That the Legislature may provide by law for one agency under the supervision of the State in each incor-

porated town of not less than two thousand population in the State; and if there be no corporated town of two thousand population in any county in this State, such county shall be entitled to have such agency, for the sale of *such liquors* for medicinal purposes; . . ." (Emphasis ours.)

It is noted that no words of prohibition appear in the ordinance except in the first sentence; this second sentence begins with a proviso to make the ordinance self-executing. It provides a punishment for acts "contrary to the provisions of this section." It is a proviso by which the declaration in the first sentence that "intoxicating liquors within this state . . . is prohibited" is given effect, and to operate directly upon the people, and without statutory enactments by the Legislature. In the next sentence is a provision under which the Legislature might establish an agency for the sale of liquors under certain conditions. Again note the language of the first sentence of the ordinance; "The . . . sale . . . except as hereinafter provided, of intoxicating liquors . . . is prohibited." Clearly the proviso under which the Legislature may provide for sale of liquors has reference to liquors as mentioned in the prohibition clause of intoxicating liquors. Likewise the proviso that persons shall be punished for their certain acts has reference to the violation of the prohibition clause. In the punishment proviso, the words, beer, ale, and wine are modified, limited and controlled by the preceding phrase of "any intoxicating liquors of any kind, including." The word "including" relates to intoxicating liquors and has the effect of carrying forward the adjective instead of repeating it as (including) intoxicating beer, intoxicating ale, intoxicating wine. This is patent because it was "intoxicating liquors" that was the subject of the prohibition and the words "beer, ale and wine" are followed by the words "contrary to the provisions of this section."

It is generally recognized that in common usage in a discussion of beverages the word "liquor" has reference to a beverage produced by the process of distillation and of high potency; although lexicographers might define beer, ale, and wine as malt liquor, fermented liquor and vinous liquor, in common usage such beverages would be called by name and be distinguished from the term liquor. In the expression "any intoxicating liquor of any kind, including beer, ale and wine," in so far as "beer, ale and wine" were concerned, and whether the same could be classified as liquors, they were to be included and prohibited if intoxicating. We think the intent clear that beer, ale and wine are mentioned with the intent that they shall come under the ban when they assume the character of an intoxicating liquor and are not prohibited by name only, and regardless of their alcoholic content or their intoxicating qualities.

In Moss v. State, 1910, 4 Okla. Cr. 247, 111 P. 950, the Criminal Court of Appeals held in paragraph 5 of the syllabus:

"Under section 7, art. 1, of the State Constitution, forbidding the sale of 'intoxicating liquor, including beer, ale and wine,' it is necessary to allege that the liquor sold was intoxicating, and to prove that fact either by evidence of its intoxicating quality or effect, or by evidence showing that the liquor sold was of that kind presumed by law to be intoxicating."

In the case at bar the claimed right of the petitioner, plaintiff in error, is a right to proceed under that constitutional provision. In the Moss Case, supra, in the body of the opinion, the court said in part as follows:

"There is a vast difference between the constitutional provision and the statutory provision in regard to the sale of liquors, . . . Under the former the liquor sold must be intoxicating; the Constitution creates the rebuttable presumption that all beer, ale, and wine are intoxicating, and the courts take judicial notice that alcohol and whiskey are intoxicating. The proper allegation

in an information drawn under the constitutional provision is that the defendant did barter, sell, give away, etc., intoxicating liquor, naming or describing it. . . ."

And further in the same opinion it was said:

". . . But, whenever the prosecutor elects to institute the prosecution under the constitutional provision instead of the statutory one, then the liquor sold must be intoxicating; and, wherever the legal presumption arises that the liquor sold was intoxicating, that presumption is not conclusive, but is subject to be rebutted by evidence on the part of the defendant. And, where there is rebutting evidence, the jury should be specifically instructed, if the defendant requests it, that if, upon a consideration of all the evidence, they entertain a reasonable doubt as to whether or not the liquor sold was intoxicating, then they should give the defendant the benefit of that doubt and acquit him. . . ."

In this case we repeat for emphasis that the petitioner not only does not allege that the beverage here involved is intoxicating, but he specifically claims the right to prosecute this action without any allegation that the beer is intoxicating and whether it is intoxicating or not or has any alcoholic content whatever.

The petitioner cites and places some reliance upon one former decision of this court and four decisions of the Oklahoma Criminal Court of Appeals, all dealing in one way or another with intoxicating liquor and alleged violations of the prohibitory liquor laws. We will notice those decisions in the following order.

Rochester Brewing Company v. State, 1910, 26 Okla. 309, 109 P. 298, was decided by this court. It was an action to seize and confiscate a shipment of beer. The judgment for the state was reversed for reasons not of special importance here. In that case there was evidence to prove the beer involved was intoxicat-

ing. The trial court expressly found it was intoxicating. That finding, upon appeal, was approved by this court upon the basis of competent evidence in the record. It was then of no particular moment that the court declare what the petitioner need not prove, since it had been proven that the beer there involved was intoxicating and the finding to that effect had been approved. We consider that decision of no merit in supporting petitioner's contention here that he need not even allege or contend the beer here involved is intoxicating or even contains alcohol.

In Antonelli v. State, 3 Okla. Cr. 580, 107 P. 951, it appears from the syllabus that the indictment referred to "intoxicating liquors, beer, ale, etc.," thus showing an intention to proceed against intoxicating beverages, and because they were intoxicating. Quite different that is from the effort here to proceed in disregard of any intoxicating quality in fact of the beer involved, or whether it contained any illegal amount of alcohol or any alcohol.

Markinson v. State, 2 Okla. Cr. 323, 101 P. 353. Here the conviction was reversed for insufficient evidence. The evidence was not found sufficient to show that the beverage involved was beer, much less being sufficient to show that it was intoxicating. In that case there is language tending to support the conclusion now reached in the case at bar, for in that case the court said:

"The prosecution was for an alleged violation of a provision of the prohibition ordinance of the Constitution, before the passage of the present prohibition law. The language of said prohibition ordinance, reasonably construed, means liquors which will intoxicate and which are commonly used as beverages for such purposes, and also any and all mixtures thereof, compounds, or substitutes for such liquors that possess intoxicating qualities. The use of intoxicating liquors as a beverage was the evil to be presented, and by the adoption of prohibition as a part of the or-

ganic law it was intended to put a stop to such use. . . ."

De Graff v. State, 2 Okla. Cr. 519, 103 P. 538. The conviction was reversed for reasons not important here. However, the case involved whisky sales as well as beer, ale and wine. It may well be said that the courts take judicial notice that whisky is intoxicating. That was held in the Moss Case, supra. Since this case, the De Graff Case, involved whisky as well as beer, it has no great force, if any at all, in a case only involving beer which is not alleged or claimed to be intoxicating.

State v. Zanger, 9 Okla. Cr. 122, 130 P. 1107. It was held in the syllabus that the information charging "the unlawful sale of beer" was sufficient to state an offense. The Criminal Court of Appeals there stated in effect that it did not approve the information as to form, but that it was construed to be sufficient to charge "the illegal sale of intoxicating liquor, to wit, beer." It is not there indicated that the court would or could have sustained the information if it had not been intended or contended that the beer involved was intoxicating in fact. None of those cases sustain the right to proceed either in a criminal or civil action where the right is claimed to so proceed under the constitutional provisions or the prohibition ordinance of the Constitution whether the beverage or beer involved is intoxicating or not and whether it has any alcoholic content or not.

In support of his argument that the acts of the defendant, as alleged, are in violation of the Constitution, plaintiff cites a number of cases from other jurisdictions. Brown v. State, 17 Ariz. 314, 152 P. 578, and Hall v. State, 19 Ariz. 12, 165 P. 300, are cited. The first named case discusses the provision of the Arizona Constitution that "ardent spirits, ale, beer, wine or intoxicating liquor or liquors of whatever kind shall not be manufactured in or introduced in-

to the State of Arizona. . . ." The court holds that the provision does not limit the specifically prohibited liquors to intoxicating forms, but those enumerated are absolutely prohibited in any form. The Arizona court said: "This prohibition amendment was lifted almost bodily from an act of the Congress of the United States." The case of United States v. Cohn, 2 Ind. Ter. 474, 52 S. W. 38, is cited. Prior to the Cohn Case the federal act prohibited "ardent spirits and any spirituous liquors or wine." The United States Supreme Court held in the case of Sarlls v. United States, 152 U. S. 570, 38 L. Ed. 556, that lager beer was not prohibited under that act. Congress amended the act to prohibit "ardent spirits, ale, beer, wine or intoxicating liquor or liquors of whatever kind." The Cohn Case comments on the apparent notice by the Congress that beer was not included in the first act and of the prompt enactment of the amendment. In the Cohn Case, of the amended federal act, it was said: "Here ale and beer were designated by name, and, as before stated, without qualification or limitation."

We find no similarity between the provisions in the Arizona Constitution and our ordinance, which simply prohibits "intoxicating liquors." The first sentence in our ordinance is a clear and definite declaration of principle of our fundamental law that intoxicating liquors are prohibited. The second sentence is a provision that the ordinance and the declaration of principle be given effect and to operate directly upon the people and without awaiting statutory enactment by the Legislature. This second sentence of our ordinance, referring to "intoxicating liquors of any kind, including beer, ale and wine," is an executing provision and not a provision of prohibition. There is the further limitation by the words "contrary to the provisions of this section." The language in our act is entirely different from the expression "beer . . . or intoxicating liquor" in the Arizona law.

204

The plaintiff cites State v. Hemrich, 93 Wash. 439, 161 P. 79, wherein the Washington Supreme Court construes an act wherein certain named beverages are defined as intoxicating liquors. It was said by the Washington court:

"We hold, therefore, that the liquors enumerated by name in our *statutory definition* of intoxicating liquors are conclusively presumed to be intoxicating liquors without regard to their actual intoxicating properties and whether in potable quantities they will in fact intoxicate or not. That as to such liquors it is only necessary to prove that the thing sold was one of the class named, but that as to other liquors or liquids capable of being used as a beverage it is necessary to prove their intoxicating properties."

The Washington case cites and quotes from various cases from other states wherein there were involved legislative definitions of intoxicating liquor which included various beverages by name or description such as "malt, liquor," etc., and wherein it was held that the beverages enumerated by name in the statutory definition of intoxicating liquors were prohibited whether in fact intoxicating or not. Among the cases mentioned and discussed are Fuller v. Jackson, 97 Miss. 237, 52 South. 873; Ex parte Lockman, 18 Idaho, 465, 110 P. 253; Brown v. State, supra; Douglas v. State, 21 Ind. App. 302, 52 N. E. 238; Sawyer v. Botti et al., 147 Iowa, 453, 124 N. W. 787; Luther v. State, 83 Neb. 455, 120 N. W. 125.

Our Constitution and prohibition ordinance does not contain a definition of intoxicating liquors and the above mentioned authorities have no applicability to the question before us. Our Constitution prohibits only intoxicating liquors and does not prohibit any beverage by name only. In the absence of any allegation in plaintiff's petition that the beer being sold was intoxicating, the petition does not charge a violation of the Constitution.

Although it is observed that plaintiff's petition is based upon an asserted application of the prohibition ordinance, it is also contended that a cause of action was stated, in that the statutes make places where beer is sold, per se, a nuisance; that beer by name is prohibited by statute.

Section 73, Title 37, O. S. 1941, is cited; said section provides:

"All places where any spirituous, vinous, fermented or malt liquors, or any imitation thereof, or substitute therefor; or any malt liquors or compounds of any kind, or description whatsoever, whether medicated or not, which contain as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States; is manufactured, sold, bartered, given away or otherwise furnished in violation of any provision of this act; and all places where any such liquor is kept or possessed by any person in violation of any provision of this act; and all places where persons congregate or resort for the purpose of drinking any such liquor, are hereby declared to be public nuisances, . . . "

Beyond question beer is a malt liquor. This section does not prohibit, but provides a penalty upon a violation of the provision of "this act." Note the language, "All places where . . . malt liquor . . . sold . . . in violation of the provisions of this act; . . . are hereby declared to be public nuisances. . . . " Title 37, sec. 15, O. S. 1941, provides:

"Wherever the words 'this act' appear in any of the laws of this state enacted for the suppression of the liquor traffic, commonly called prohibition laws, they shall be construed to mean and include all such prohibition laws of the state."

Under the provisions of this statute it becomes apparent that to discover what constitutes a "violation of this act" we must examine the various statutes relating to liquors. We must determine

the question, Do the statutes of Oklahoma prohibit the sale of beer, as such, or malt liquor as such? That is, by name, and without regard to alcoholic content or intoxicating quality.

Title 37, sec. 1, O. S. 1941, provides:

"It shall be unlawful for any person, individual or corporation to furnish, except as in this chapter provided, any spirituous, vinous, fermented or malt liquors, or any imitation thereof or substitute therefor, or to manufacture, sell, barter, give away or otherwise furnish any liquors or compounds of any kind or description whatsoever whether medicated or not which contain more than three and two-tenths (3.2%) per cent of alcohol, measured by weight, and which is capable of being used as a beverage. . . . "

It is contended that under the language of this act it is made unlawful for any person to furnish malt liquors and without regard to alcoholic content.

All recognized lexicographers define "malt liquor" as an alcoholic beverage, but an "imitation thereof" may be altogether nonalcoholic; as the once well known product "bevo." "Any liquors or compounds whether medicated or not" may be nonalcoholic, although the word liquors in such usage as appears herein connotes a liquid of some alcoholic content. It is thus noted that the liquid mentioned after the word "furnish" and after the words "otherwise furnish" is alcoholic, or nonalcoholic, and after such words are mentioned products that are a beverage and products that may not be capable of being used as a beverage. We think the clause "and which is capable of being used as a beverage" relates to all preceding products mentioned in the act and likewise the clause "which contain more than three and two-tenths (3.2%) per cent of alcohol;" that it was the intention of the lawmakers to make it unlawful to traffic in all beverages containing more than 3.2% alcohol; that the test of the unlawfulness was in the percentage of alcohol in the product by whatever name the beverage might be

called. That such was the intention of the lawmakers is made clear by an examination of other sections adopted at the same time. The section sometimes referred to as the referendum measure was adopted in 1933, being section 2, chapter 153, Session Laws of 1933, and at the same time there was adopted Title 37, sec. 151, O. S. 1941; sec. 1, ch. 153, Session Laws, 1933, which contained a declaration policy. This section was repealed by the Legislature in 1939, and then in effect re-enacted and as now appears.

Title 37, sec. 162, O. S. 1941, provides:

"Beverages containing more than three and two-tenths (3.2%) per cent alcohol by weight are hereby declared to be intoxicating; all other beverages are hereby declared to be nonintoxicating. The manufacture, distribution and sale of beverages containing more than one-half of one (½ of 1%) per cent alcohol by volume and not more than three and two-tenths (3.2%) per cent alcohol by weight, are hereby declared subject to the provisions of this Act."

At the time of the passage of the Referendum Act of 1933, in addition to adoption of the section containing the declaration of policy, numerous other sections were adopted providing for the issuance of license for the sale, regulations and taxation of beverages containing more than ½ of 1% of alcohol and not more than 3.2% alcohol and now as stated in section 162, supra, making such beverage "subject to the provisions of this act."

It seems certain that the intention of the lawmakers was to make unlawful the sale of all beverages containing more than 3.2% alcohol and to authorize sale, under regulation, of all alcoholic beverages of not to exceed 3.2% alcohol. To make unlawful all "spirituous, vinous, fermented or malt liquors, or any imitation thereof or substitute therefor," which describes every known alcoholic beverage, and in the same act provide for the license for sale, regulation and taxation of all alcoholic beverages not in excess of a definite percentage of

alcohol would be unreasonable and absurd.

In Bankers Union Life Ins. Co. v. Read, 182 Okla. 103, 77 P. 2d 26, this court said in paragraph 6 of the syllabus:

"In construing statutes courts must presume a legislative intendment of reasonable operation of all parts of the act."

And in paragraphs 2, 3, 4 and 5 thereof:

"In construing a statute the court must avoid an interpretation which will result in absurd consequences.

"Legislative acts should be construed so as to make all parts thereof harmonious, if a reasonable construction can accomplish the result.

"Where the legislative body manifests a definite purpose in an act, it will be presumed that in furtherance of such purpose the lawmaking power formulated the subsidiary provisions in harmony therewith.

"It will not be assumed that one part of a legislative act will make inoperative or nullify another part of the same act, if a different and more reasonable construction can be applied."

The statutory enactments above mentioned, which are the latest expression of our lawmaking body, not only do not prohibit the sale of beer as such, but affirmatively authorize the sale of beverages, which would include beer, when the alcoholic content is not in excess of 3.2% by weight. It follows that Title 37, sec. 73, O. S. 1941, cannot be invoked to justify injunctive relief under a pleading charging sale of beer as such and without reference to an unlawful alcoholic content. Such allegation does not charge a violation of the provisions of this act.

In the years since statehood it is a matter of common knowledge that many actions for injunction have been prosecuted where it was claimed the place was operated in violation of the prohibitory liquor laws. But no case is called to our attention where the right was claimed to so proceed without alleging or contending that the liquor or beverage involved was intoxicating, and we know of no such prior case. That is the contention here made, but for the reasons set out we have found that contention not tenable. None of the cited cases, in our judgment, even tend to support such contention.

In determining this matter the remarks of the trial judge well indicate the scope of the hearing there, and the fundamental basis for the decision which we here approve. In part it was there said:

"The Court: I will say that I am grateful to counsel on both sides for having given this case very thorough and almost exhaustive study. . . .

"You know reading that provision of the Constitution, I just can't get away from the fact that the framers of the Constitution, and the people when they were voting on it, wanted to prohibit in this state the sale and traffic in intoxicating liquors.

" 'The manufacture, sale, barter, giving away, or otherwise furnishing, except as hereinafter provided, of intoxicating liquors within this State, or any part thereof is prohibited.' . . .

"Now, in the penalty clause that provision is: 'Any person, individual, or corporate who shall manufacture, sell, barter, give away, or otherwise furnish, intoxicating liquors.'

"That is what they are talking about —intoxicating liquors of any kind. Now, they are not merely talking about liquor that we usually refer to as liquor.

"Usually we refer to liquor as whisky, gin and brandy. That is what we call liquor. But they say that isn't all. They say, 'We don't want any of these intoxicating liquors sold and we happen to know that ale, beer and wine are sometimes intoxicating. We don't want them sold when they are intoxicating.'.

"That is my construction of the provisions of the Constitution. When I have done that I have decided this case because if that is the correct construc-

tion of the Constitution, then all of Mr. Springer's authorities are gone up. In every case he read where beer was held to be prohibited, whether intoxicating or not, it was prohibited per se and e o nomine. . . . Beer by name was prohibited. I think it was not in this provision of the Constitution.

"Now, I am not making any objection to Mr. Springer's authorities because if the Legislature or the people want to prohibit the sale of beer, whether intoxicating or not, it is proper for the Legislature or the people to do so.

"I think very favorably of the argument presented by the Tax Commission that the county attorney doesn't have authority to sue the Tax Commission. I am not passing on that because it isn't necessary. . . . "

The various demurrers of the defendant presented several other matters, as to procedure, propriety of forum and parties, and the like, but we have preferred to determine the merits of plaintiff's petition, as did the trial court. The other grounds of demurrer are not determined.

The defendants have cited authorities well supporting the contentions that the people in the referendum act, and the Legislature, had the power to define the term "intoxicating liquor," as used in the prohibition•article of the Constitution, in terms of percentage of alcohol; that the fixing of the dividing line for beverages at 3.2% alcohol and the classification of beverages above and below is a reasonable exercise of that power, and that the enactments referred to are wholly valid. See the language of the court in Ruppert v. Caffey, 251 U. S. 264, 64 L. Ed. 260; Act of Congress approved May 22, 1933 (27 U.S.C.A. sec. 64a et seq.); Ryman v. Legg, 179 Ga. 534, 176 S. E. 403; Wilson v. State, 130 Neb. 752, 266 N. W. 614. Defendants also cite statutes and decisions disclosing that a large number of the other states have adopted the same figure or percentage, that is, 3.2%.

It may be that serious inconsistency would or might arise in the administra-

tion and enforcement of prohibition laws as to determination of the intoxicating quality of beverage of low or small alcoholic content. That is obviated, and uncertainties are removed by the legislative fixing of the percentum of alcoholic content which, as a matter of law, should be taken as nonintoxicating.

We have fully reviewed the trial court decision and all contentions of petitioner. We find the contention and position of petitioner to be without legal foundation, and that the trial court conclusion was correct.

Affirmed.

DAVISON, V.C.J., and OSBORN, BAYLESS, CORN, GIBSON, and ARNOLD, JJ., concur. HURST, C.J., and RILEY, J., dissent.

———

HURST, C.J. (dissenting). The majority opinion is contrary to the views entertained by all the Justices who first sat upon this court and the Criminal Court of Appeals, as shown by opinions rendered in 1909 and 1910, when the question of the intention and understanding of those responsible for framing and adopting our Constitution and the prohibition ordinance was fresh in the minds of the judges and the people.

In Rochester Brewing Co. v. State (1910) 26 Okla. 309, 109 P. 298, in an opinion written by Justice Williams, and concurred in by Justices Dunn, Hayes, Kane, and Turner, this court, in paragraph 1 of the syllabus, said:

"When the word 'beer' is used without restriction or qualification, it denotes an intoxicating malt liquor, and, being included by the constitutional provision among intoxicating liquors, one who unlawfully handles beer has the burden of proof to show that it is not intoxicating if he so claims."

Justices Williams, Hayes and Kane were delegates to the constitutional convention and knew first hand what was

intended by these constitutional provisions.

That this view was entertained by all of the first five Judges of the Criminal Court of Appeals (Judges Furman, Doyle, Baker, Owen and Richardson) is shown by the following quotations:

"If the proof had shown that the contents of the bottle was beer, that would have been sufficient, as said ordinance designates beer as intoxicating liquor." Markinson v. State (1909) 2 Okla. Cr. 323, 101 P. 353.

"The provision of the Constitution under which the indictment was had includes beer as one of the liquors prohibited, and defines it as intoxicating." Antonelli v. State (1910) 3 Okla. Cr. 580, 107 P. 951.

"In prosecutions for selling liquors when the sale was made prior to the passage of the enforcement act, and the prosecution is based upon the provisions contained in our Constitution, if the liquor sold comes within one of the classes mentioned in the Constitution it need not be alleged or proven that such liquor was intoxicating." De Graff v. State, 2 Okla. Cr. 519, 103 P. 538.

"The Constitution classes beer as an intoxicating liquor; this makes it presumptively so, and it is therefore incumbent upon the defendant, when it is shown that the article which he sold was beer, to remove by evidence the presumption thus created that it was intoxicating, and, if no evidence as to its intoxicating quality is introduced by either side, the presumption that it was intoxicating is conclusive upon the jury." Moss v. State (1910) 4 Okla. Cr. 247, 111 P. 950.

These views entertained by eminent Judges soon after statehood are in harmony with the rule obtaining generally in the other states. See Black on Intoxicating Liquors, §§ 469, 521; 30 Am. Jur. 460 (note 8), 475 (note 7); 48 C.J.S. 417 (note 54), 554 (note 61).

The rule in civil cases is that in testing the sufficiency of a petition by demurrer, it is to be liberally construed, and all facts well pleaded together with all inferences which may be reasonably drawn therefrom must be taken as true. Farmers & Merchants National Bank v. Lee, 192 Okla. 9, 132 P. 2d 931. Under this rule an allegation that whisky, which all the courts judicially know to be intoxicating, or beer, which the Constitution names as being intoxicating, was kept for sale and sold would be a sufficient allegation that it is intoxicating in an action to abate a nuisance.

The provisions have the same meaning today as they did in 1907, and we should so hold. The fact that the people voted for the Non-Intoxicating Beverage Law, not as a constitutional amendment but as an ordinary statute, and that large revenues are being collected under that law, are beside the point. It is our duty to properly interpret and then enforce the Constitution.

2. The majority opinion is not only contrary to the decisions just cited, and which have not been overruled, but it also violates what I believe are settled rules of construction.

a. One of the applicable rules of construction is to consider the evils sought to be remedied and the history of the provision and the policy behind it. 50 Am. Jur. 274, 279, 291; 11 Am. Jur. 677. Why did Congress, in section 3 of the Enabling Act, require the inclusion in the Constitution of a provision prohibiting the manufacture, advertisement, sale, etc., of "intoxicating liquor of any kind, including beer, ale and wine" (the exact language used in the prohibition ordinance and section 7, art. 1, of the Oklahoma Constitution) in what was then the Indian Territory, the Osage Indian Reservation and the other Indian Reservations? The debates in Congress clearly answer this question. At page 1553 of 40 Congressional Record, Part 2, Congressman Cole of Ohio stated the purpose as follows:

"The purpose of this prohibitive clause is to carry out the policy of the

Federal Government toward the Indians since 1832. The established policy of the nation is to *prohibit the sale of liquor among the Indians.* The treaties signed by the Dawes Commission with the Five Civilized Tribes, under which their lands have been allotted and under which they have accepted citizenship, provided that—'The United States agrees to maintain strict laws in the territory of the said nations against the introduction, sale, barter, or giving away of *liquors and intoxicants of any kind or quality.'"* (Italics mine.)

The framers of the Constitution and of the prohibition ordinance were, no doubt, as conversant with the policy of Congress in this regard as were the members of Congress. They should be presumed to have had the same intention as Congress, for they used the same language in the prohibition ordinance as Congress used in the Enabling Act.

The policy of the United States Government to protect the Indians against the use of all kinds of liquor is shown by the quoted treaty provision, "liquors and intoxicants of any kind or quality." The policy of Congress is shown by the various acts. The Act of March 15, 1864, 13 Stat. 29, referred to "spirituous liquor or wine." In Sarlls v. United States, 152 U. S. 570, 38 L. Ed. 556, 14 S. Ct. 720, it was held that these terms did not include beer. On July 23, 1892, while that case was pending, Congress amended the law to cover "ardent spirits, ale, beer, wine, or intoxicating liquors of any kind." See 27 Stat. 260. Then on March 1, 1895, Congress changed the statute to read "vinous, malt or fermented liquor, or any other intoxicating drinks of any kind whatsoever". 28 Stat. 697. Again, on January 30, 1897, Congress changed it to read "malt, spirituous or vinous liquor, including beer, ale and wine, or any ardent or other intoxicating liquor of any kind whatsoever, or any essence, extract, bitters preparation, compound, composition, or any article whatsoever, under any name, label or brand, which produces intoxication." 29 Stat. 506. Thus it is seen

that Congress, mindful of the attempts to evade the law, was striving to protect the Indians against the use by them of all kinds of alcoholic liquors, by making each succeeding law more inclusive than the prior laws. In United States v. Cohn, 2 Ind. Ter. 474, 52 S. W. 38, decided in 1899, the court held that the Act of March 1, 1895, above quoted, covered beer and malt liquors "whether intoxicating or not," and rejected the argument that the words "any other intoxicating drinks" modified the preceding words "vinous, malt, or fermented liquor."

Thus it is plain that at the time of the framing and adoption of our Constitution and the prohibition ordinance, it was the policy of Congress to prohibit the sale to the Indians of all kinds of alcoholic beverages, including beer, ale and wine by name, and this, I think, was the policy intended to be carried out by our constitutional provisions. The trend in 1906 and 1907 was toward prohibitory liquor laws, and within a few years thereafter the states adopted national prohibition. The fact that the trend in recent years has been against such laws is not material and does not change the meaning of these constitutional provisions.

b. Another applicable rule of construction is that it is to be presumed that it was intended that each word and clause in a statute or constitutional provision should have some significance and none should be held to be superfluous. 11 Am. Jur. 665. If, as the majority opinion holds, it was intended to prevent the sale only of "intoxicating liquors," why were the words "including beer, ale and wine" used? All the authorities then agreed that beer and ale were fermented alcoholic malt liquors, and that wine was a fermented alcoholic vinous liquor. 23 Cyc. 60, 64; 17 Am. & Eng. Enc. of Law 199, 200; Black on Intoxicating Liquors, §§ 5, 16, 17. The word "liquors" denoted a vinous, fermented or malt liquor. Black, above, page 8. In United States v. Cohn,

above, the court used this pertinent language:

"It will be seen that the only kinds of liquors specifically named by the statute are vinous, malt, and fermented liquors. If it were intended that only such of these as could be shown to be intoxicating should be included, why name them at all? Why not simply say that all intoxicating liquors and drinks should be prohibited, or whisky, brandy, rum, wines, and all other intoxicating drinks?"

Congress and the delegates to the Constitutional Convention should not be convicted of doing a vain thing, by using the words "including beer, ale and wine," when they were included in the preceding words "intoxicating liquors," if in fact intoxicating.

The reason these words were used was to make certain that these borderline liquors, concerning which there was a division of opinion as to whether they denoted intoxicating liquors, should be prohibited, so that all would know that they were prima facie intoxicating and the burden would not be on the prosecuting officers in each prosecution to allege and prove the alcoholic content and that such liquors were in fact intoxicating.

c. Another applicable rule of construction is that words used in the Constitution are to be understood in their plain, ordinary and popular sense, unless the contrary appears. 11 Am. Jur. 680. Under this rule, we must presume that the word "beer" was so used. According to the weight of authority in 1906 and 1907, when our Constitution and prohibition ordinance were framed and adopted, the word "beer" ordinarily denoted an intoxicating malt liquor. Black on Intoxicating Liquor, 1892, § 17; 17 Am. & Eng. Enc. of Law (1900) p. 201. And this is still the prevailing rule. 20 Am. Jur. 116; 30 Am. Jur. 256; 48 C.J.S. 140. According to the Encyclopedia Britannica, 1910 Edition, beer then generally made and sold in this country contained from 2.68 to 4.12 per cent of alcohol by weight. It seems clear that in using the word "beer" in the Enabling Act, the prohibition ordinance, and section 7, art. 1, of the Constitution, Congress and the framers of the Constitution had in mind the alcoholic malt beverage then in general use throughout the country. Can it be doubted that the 3.2 beer now being widely advertised, manufactured and sold as "beer," and which contains about the same percentage of alcohol as "beer" did in 1907, is not "beer" such as is referred to in the prohibitory provisions of our Constitution? Can it be doubted that when the average citizen refers to "beer" he means a fermented alcoholic malt liquor? If he means any other kind of beer, he refers to it by its full name, such as "near beer," "root beer," etc. If the liquid does not contain alcohol it is not "beer" as the term is commonly understood.

d. In saying that the first part of the prohibition ordinance was the prohibition clause and the second part the self-executing clause, the majority opinion violates the rule of construction that the provision should be looked to from its four corners to ascertain its meaning. 11 Am. Jur. 662. The second part is also a prohibition clause, in that it fixes a penalty for its violation. It has the effect of broadening the first part and naming beer, ale and wine as prohibited liquors.

The Selective Service Act of 1917, 40 Stat 82, made it a crime to sell "any intoxicating liquor, including beer, ale and wine" to the officers and soldiers in uniform. The Judge Advocate General held that beverages containing 1.4 per cent of alcohol came within the act. See note (L) to Ruppert v. Caffey, 251 U. S. 264, 40 S. Ct. 141 at 149. An examination of the exhaustive note to that case will disclose that a method frequently adopted to make the prohibition of the sale of intoxicants effective was to name the border-line liquors, such as beer, ale and wine, or to refer to them as malt or vinous liquors, and

in the great majority of the states where they were referred to by name, it was held that sale of liquors by such names was either absolutely prohibited or they were made prima facie intoxicating. And in note (M) an opinion of the Attorney General of the United States was quoted to the effect that the words "intoxicating liquors" are so indefinite as to preclude the efficient and uniform administration of the law. The reason, therefore, for naming beer, ale and wine was to include them among the prohibited liquors so that there could be an efficient and uniform enforcement of the constitutional provisions.

These constitutional provisions designate beer, ale and wine as intoxicating liquors. The Legislature is without power to declare them nonintoxicating. And, in fact, it has not done so in the Non-Intoxicating Beverage Taxing Law, for beer, ale and wine are not named therein. However, it is probable that the Legislature could validly declare that beverages not named in the Constitution, which contain no more than 3.2 per centum of alcohol, are nonintoxicating, for such beverages are on the border line between intoxicating and nonintoxicating beverages and the question of whether they are intoxicating is a debatable one. Ruppert v. Caffey, above. The Legislature would have no such power as to liquors, which all the courts take judicial notice are intoxicating, such as alcohol, whisky, rum, brandy, gin, etc., for the Constitution clearly covers such liquors under the designation "intoxicating liquors."

If the people of Oklahoma have changed their minds since 1907, and if a new generation has grown up which is not aware of the evils which brought about constitutional prohibition or which believes that constitutional prohibition has not operated satisfactorily, the Constitution provides a method of amending or repealing the prohibition clauses. Until that is done, the manufacture, advertisement, transportation, sale, etc., of beer, ale, and wine is expressly forbidden and constitutes a crime.

It follows that the allegation that the defendant Bliss was operating a nuisance by sale of "beer" stated a cause of action, and she should be required to make her defense. Under the foregoing authorities, it was not necessary for plaintiff to allege that the beer being handled was intoxicating, since it was not necessary for the plaintiff to prove that fact, as only such facts as must be established by evidence need be alleged. State v. Prock, 195 Okla. 387, 158 P. 710; 49 C. J. 134; 41 Am. Jur. 344. If the product she is selling is not the "beer" referred to in the Constitution, that would constitute a good defense. The demurrer to the petition should have been overruled.

For the foregoing reasons, I respectfully dissent.